## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### ASHLAND, LONDON AND LEXINGTON DIVISIONS

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| **LICKING RIVER MINING, LLC,** *et al.* | : | **Case No. 14-10201** |
| | : | **Jointly Administered** |
| **Debtors** | : | |
| _____ | : | |
| | : | |
| **Phaedra Spradlin,** *Trustee, on behalf of* | : | |
| *J.A.D. Coal Company, Inc., Licking River* | : | |
| *Resources, Inc., S.M.&J., Inc., Sandlick* | : | |
| *Coal Company, LLC, Fox Knob Coal* | : | |
| *Company, Inc., Licking River Mining, LLC,* | : | |
| *Oak Hill Coal, Inc., Harlan County Mining,* | : | |
| *LLC, U.S. Coal Marketing LLC, and U.S.* | : | |
| *Coal Corp.,* | : | |
| | : | **Adv. No. 16-1031** |
| **Plaintiffs** | : | |
| **v.** | : | |
| | : | |
| **PRYOR CASHMAN LLP,** | : | |
| | : | |
| **Defendant** | : | |
| _____ | : | |

### MEMORANDUM OPINION AND ORDER
### PARTIALLY DISMISSING FIRST AMENDED COMPLAINT

This matter is before the Court on Defendant's Motion to Partially Dismiss the Trustee's

First Amended Complaint.   [ECF No. 30 ("Motion").]   In her First Amended Complaint [ECF

No. 27 ("Amended Complaint" or "Am. Compl.")], Plaintiff Phaedra Spradlin, chapter 7 trustee

("Trustee"), on behalf of debtor U.S. Coal Corporation ("U.S. Coal") and its nine co-debtor

subsidiaries ("Subsidiaries"[1]), asserts claims against Pryor Cashman LLP ("PC") for avoidance

---

[1] U.S. Coal's Subsidiaries are: J.A.D. Coal Company, Inc., ("JAD"), Licking River Mining, LLC ("LR Mining"), Licking River Resources, Inc. ("Resources"), S.M.&J., Inc. ("SM&J"), Fox Knob Coal Co., Inc. ("Fox Knob"), Oak Hill Coal, Inc. ("Oak Hill"), Sandlick Coal Company, LLC ("Sandlick"), Harlan County Mining, LLC ("Harlan"), and U.S. Coal Marketing LLC ("Marketing").   U.S. Coal and the Subsidiaries are referred to collectively as "Debtors."

of fraudulent transfers under chapter 5 of the Bankruptcy Code[2] and, via § 544, under Kentucky

Revised Statutes §§ 378.010 and 378.020.[3]    Trustee also asserts claims under chapter 5 of the

Bankruptcy Code for recovery of preferential transfers, recovery of all transfers avoided, and

disallowance of claims.

PC moves to dismiss Counts I through IX of the Amended Complaint, to the extent they

seek to avoid and recover the transfer of money paid to PC,[4] for failure to state a claim under

Civil Rule 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b).

## BACKGROUND AND FACTS ALLEGED IN THE
## AMENDED COMPLAINT AND ITS EXHIBITS

Trustee filed the initial complaint commencing this adversary proceeding on June 7,

2016, asserting nine Counts on behalf of U.S. Coal and the Subsidiaries against PC under the

same legal theories contained in the Amended Complaint.    On July 26, PC moved to partially

dismiss the claims in the initial complaint, arguing: (a) the claims relating to cash transfers failed

to state a claim upon which relief could be granted as a matter of law; (b) the claims relating to

cash transfers were implausible as plead; and (c) the fraud claims were not plead with requisite

particularity.    [ECF No. 16.]    Trustee filed the Amended Complaint three weeks later, on

August 16, in response to PC's first motion to dismiss.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___," and references to the Federal Rules of Civil Procedure appear as "Civil Rule __."

[3] Effective as of January 1, 2016, chapter 378 of the Kentucky Revised Statutes was repealed, and Kentucky adopted the Uniform Voidable Transactions Act ("UVTA"). KY. REV. STAT. §§ 378A.005 to .140. "No statute shall be construed to be retroactive, unless expressly so declared." KY. REV. STAT. § 446.080(3). The UVTA does not state that it is retroactive. Therefore, any transfer, like those that are the subject of this action, occurring prior to its enactment must be considered under the repealed chapter 378, which was in effect at the time of the pertinent transfers. Textual references to the Kentucky Revised Statutes hereafter shall appear as "K.R.S. § ___."

[4] As discussed below, after PC obtained a state court judgment against U.S. Coal for nonpayment of its fees, PC and U.S. Coal reached a settlement agreement with a promissory note and payment schedule, and the Subsidiaries transferred security interests in their assets to PC to secure the note. Trustee also seeks to avoid those security interests, but that issue is not before the Court on this Motion.

The Amended Complaint alleges that U.S. Coal retained PC as legal counsel in July 2006

with regard to various corporate and securities matters.[5]   Between 2006 and 2011, PC rendered

legal services to U.S. Coal via an employment contract that U.S. Coal alone signed.   On January

12, 2007, U.S. Coal transferred 375,000 shares of stock to PC in exchange for PC's willingness

to defer payment of its attorneys' fees until U.S. Coal obtained financing for the acquisition of

"Licking River."[6]   [Am. Compl. ¶ 32.]

On September 2, 2011, PC filed a state court complaint against U.S. Coal for its unpaid

fees.   The Subsidiaries were not parties to that action and PC never tried to seek recovery of its

unpaid fees directly from the Subsidiaries, even on a *quantum meruit* basis.   On February 4,

2013, PC obtained a judgment against U.S. Coal in the amount of $2,455,478.86, plus interest

from August 2011.   Thereafter, PC and U.S. Coal entered into a settlement agreement in which

U.S. Coal agreed to pay the full judgment amount over a five-year period, and pursuant to which

U.S. Coal executed a promissory note.   [ECF No. 27-3.]   The promissory note called for regular

monthly payments by U.S. Coal to PC of $45,000.00.   [ECF No. 27-15 at 30-38.]   "U.S. Coal

promptly made regular payments" on the promissory note in connection with the settlement, with

the exception of a payment due in May 2014 that was past due and paid "at the same time [LR

Mining] was being placed into involuntary bankruptcy."   [Am. Compl. ¶ 65.]

Although none of the Subsidiaries executed the note, PC "forced" the Subsidiaries to

pledge their assets to secure payment of the note for which Trustee asserts the Subsidiaries

received no value.   [*Id*. ¶ 61].   Between March 2013 and May 2014, when the first involuntary

---

[5]  A court evaluating a motion to dismiss under Civil Rule 12(b)(6) must accept all of the well-pleaded factual allegations in the complaint as true, and construe the complaint liberally in the plaintiff's favor.   *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999).   This Memorandum Opinion and Order thus takes as true the well-pleaded facts alleged in the Amended Complaint.

[6]  The Amended Complaint does not define the term "Licking River."   The Court assumes it refers to the group of subsidiary companies (LR Mining, Resources, SM&J, and Oak Hill) that comprise the "Licking River Division," as that term has been used in jointly-administered Chapter 7 Case No. 14-10201 and the related adversary proceedings.

petitions were filed, U.S. Coal paid PC $1,275,000.00, of which $135,000.00 was paid within

ninety days prior to the entry of the U.S. Coal Order for Relief.[7]   [*Id.* ¶¶ 65, 66.]

The Amended Complaint seeks, *inter alia*, to recover funds U.S. Coal paid to PC between

July 2010 and May 2014 totaling $1,633,286.18 ("Cash Transfers").   Trustee partly bases her

fraudulent transfer claims on allegations that PC rendered no legal services to the Subsidiaries

and they received no benefit from PC's services, yet U.S. Coal used the Subsidiaries' funds to

pay PC's fees.   Trustee asserts that U.S. Coal generated no income of its own and took

payments from the Subsidiaries to pay U.S. Coal's operating expenses.   [*Id.* ¶ 31.]

The Amended Complaint asserts several causes of action relating to the Cash Transfers:

   a. Counts I and III allege actual fraud premised on the theory the Cash Transfers
      U.S. Coal made to PC were from the Subsidiaries' funds and not U.S. Coal's.

   b. Counts II, IV, V and VI allege constructive fraud also premised on the argument
      that the Cash Transfers belonged to the Subsidiaries.

   c. Count VII is an alternate count alleging that payments in the amount of
      $135,000.00 made to PC within ninety days of the "Petition Date" are avoidable
      as preferential transfers under § 547 (the "Preference Payments").

   d. Count VIII seeks to recover any avoided transfers on theories that, unde § 550, PC
      either was the initial transferee, the immediate or mediate transferee, or the entity
      for whose benefit the transfers were made.

   e. Count IX seeks to disallow PC's claims against the debtors under § 502(d).[8]

## JURISDICTION

The Court has jurisdiction of this matter.   28 U.S.C. § 1334(b).   This is a core

proceeding.   28 U.S.C. § 157(b)(2)(F), (H).   Venue is proper.   28 U.S.C. § 1409.

## MOTION TO DISMISS STANDARD

Civil Rule 8(a)(2), made applicable in adversary proceedings via Bankruptcy Rule

7008(a), requires "a short and plain statement of the claim showing that the pleader is entitled to

---

[7] Orders for Relief were entered on June 12, 2014, as to U.S. Coal, LR Mining, Fox Knob, Resources, SM&J and
JAD.   Marketing, Sandlick, Oak Hill and Harlan filed voluntary petitions on November 4, 2014.

[8] Count IX is not addressed in the Motion.

relief."  FED. R. CIV. P. 8(a)(2).   In analyzing the pleading requirements of Civil Rule 8(a)(2) in

connection with a Civil Rule 12(b)(6) motion to dismiss, the Supreme Court stated, "[t]o survive

a [Civil Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).   In defining the

"plausibility" standard, the Supreme Court stated,

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.   The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.   Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'"
>
> . . .
>
> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.   While legal conclusions
> can provide the framework of a complaint, they must be supported by factual
> allegations.   When there are well-pleaded factual allegations, a court should
> assume their veracity, and then determine whether they plausibly give rise to an
> entitlement to relief.

*Id.* at 678-79 (citations omitted) (quoting *Twombly*, 550 U.S. at 556, 557).   Thus, as to each

count, the Court must determine whether the Amended Complaint contains sufficient factual

matter as to each element necessary to state a claim to relief that is plausible on its face.

> In determining whether a complaint states a plausible claim for relief, the Court
> may consider the facts alleged in the pleadings, documents attached as exhibits or
> incorporated by reference in the pleadings, and matters of which the Court may
> take judicial notice.

*Haney v. Educ. Credit Mgmt. Corp. (In re Haney)*, Ch. 13 Case No. 97-70937, Adv. No. 11-

7024, 2011 WL 6000886, at *2 (Bankr. E.D. Ky. Nov. 30, 2011) (citations omitted), *appeal*

*dismissed as untimely*, 2012 WL 3683533 (E.D. Ky. Aug. 27, 2012); *see also Century Indemnity*

*Co. v. Special Metals Corp. (In re Special Metals Corp.),* 317 B.R. 326, 329 (Bankr. E.D. Ky.

2004) (stating that, in evaluating a motion to dismiss, "[t]he court is generally not to look beyond

the pleadings, but may consider documents incorporated by reference into the pleadings, even if

those documents are not attached to the pleadings.") (citation omitted); *In re Ludwick*, 185 B.R.

238, 240 n.3 (W.D. Mich. 1995) (stating that Federal Rule of Evidence 201 permits a court to

take judicial notice of its own court records).

## LAW AND ANALYSIS

Trustee seeks to avoid the Cash Transfers to PC and to recover from PC as a transferee.

"[A]voidance and recovery are distinct concepts and processes" that "are addressed in two

separate sections of the code."   *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003).

"[T]he fact that avoidance is a necessary precondition to § 550 recovery does not imply that

avoidance is a sufficient condition for § 550 recovery or that avoidance automatically triggers

§ 550 recovery."  *Id.*   The two remedies are "related conceptually," but "must be kept

analytically separate."   *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 532 (6th Cir. 2003); s*ee*

*also Tibble v. Farmers Grain Express, Inc. (In re Mich. BioDiesel, LLC)*, 510 B.R. 792, 796

(Bankr. W.D. Mich. 2014).

With regard to recovery, § 550(a) and (b) provide:

(a) Except as otherwise provided in this section, to the extent that a transfer is
avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
trustee *may* recover, for the benefit of the estate, the property transferred, or, if the
court so orders, the value of such property, from—

(1) the *initial transferee* of such transfer or the entity for whose benefit
such transfer was made; *or*

(2) any *immediate or mediate transferee* of such initial transferee.

(b) The trustee *may not* recover under section [subsection] (a)(2) of this section from--

(1) a *transferee that takes for value*, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2)  *any immediate or mediate good faith transferee* of such transferee.

11 U.S.C. § 550 (emphasis added).    Trustee's Amended Complaint seeks to avoid—and thereafter recover—the Cash Transfers from PC under several overarching theories.    The substantive avoidance causes of action are grouped together for purposes of this analysis based on the recovery theories advanced in the Amended Complaint and PC's alleged status as a transferee.    The Court first will address the claims to the extent they seek to avoid the Cash Transfers and recover from PC as a mediate or immediate transferee.    The Court then will address the claims to the extent they seek to recover from PC as the initial transferee of the Cash Transfers from the Subsidiaries, or as the entity for whose benefit the Cash Transfers were made.    Lastly, the Court will address the claims to the extent they seek avoidance and recovery of the Cash Transfers from PC as the initial transferee from U.S. Coal.

**I.     Trustee's Claims against PC as a Mediate or Immediate Transferee Fail to State a Claim upon which Relief can be Granted because the Amended Complaint Fails to State a Claim for Avoidance of Transfers from the Subsidiaries to U.S. Coal.**

Subsection 550(a)(2) concerns subsequent transfers and authorizes a trustee to recover an avoided transfer (or its value) from subsequent transferees of the initial transferee, subject to a good faith defense in § 550(b).    *Holber v. Pocius (In re Pocius)*, 556 B.R. 658, 667 (Bankr. E.D. Pa. 2016).    An immediate or mediate transferee "is simply one who takes in a later transfer down the chain of title or possession."    *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992).    As applied here, Trustee alleges that PC is an immediate or mediate transferee to the extent PC received Cash Transfers from U.S.

7

Coal that originated from the Subsidiaries.    The Amended Complaint, however, lacks specific

factual allegations about even one purported transfer from any of the Subsidiaries to U.S. Coal.

Count I of the Amended Complaint, grounded in actual fraud under Kentucky law, states:

> *The Subsidiary Debtors…directly or indirectly through U.S. Coal*, made payments
> totaling at least $1,633,286.18 to the Defendant from July 16, 2010 to the filing of the
> involuntary bankruptcy….    [Am. Compl. ¶ 86 (emphasis added).]

The language challenging the Cash Transfers in the remaining fraudulent conveyance Counts is

identical: "The Subsidiary Debtors … directly or indirectly through U.S. Coal …" made

transfers.    [*Id*. ¶¶ 93 (Count II), 101 (Count III), 109 (Count IV), 117 (Count V), 125 (Count

VI).][9]    With regard to the mechanism of the transfers, the Amended Complaint merely asserts

that U.S. Coal generated no funds of its own and instead

> took funds from the Subsidiary Debtors to pay 'U.S. Coal's Operating Expenses.'
> *See* Motion for an Order Authorizing (i) Debtors to Continue Cash Management
> System and Maintaining Existing Bank Accounts and Business Forms and (ii)
> Financial Institutions to Honor and process Related Checks and Transfer (Doc.
> No. 604).    [*Id*. ¶ 31.]

The Amended Complaint's citation to "Doc. No. 604" refers to Debtors' request in their

jointly-administered chapter 11 cases to authorize Debtors to continue to use their "Cash

Management System," which they described as follows:

> 11.    Pursuant to the Cash Management System, the Debtors collect,
> concentrate and disburse funds generated by the Debtors' operations.    The Cash
> Management System also enables the Debtors to perform cash reporting, monitor
> the collection and disbursement of funds and maintain control over intercompany
> obligations and the administration of their Bank Accounts.    The Cash
> Management System is not entirely automated: the Debtors' employees are
> required to monitor the system and manage the proper collection and
> disbursement of funds.

> 12.    The Cash Management System has three main components: (i) cash
> collection; (ii) cash concentration; and (iii) cash disbursement.    The Debtors
> generate and receive funds from a wide variety of sources, including revenue

---

[9]  In Count VII, alleging preferential transfers within 90 days of the (undefined) "Petition Date," Trustee asserts that
"U.S. Coal and the Subsidiary Debtors made, or caused to be made, the transfers to, or for the benefit of, Defendant
("547 Transfers)."    [Am. Compl. ¶ 132.]

from coal supply agreements with various customers, including electricity
generators, industrial users, steel mills and independent coke producers.

13.     The Additional Debtors do not currently generate any revenue.   All
revenue is generated through their affiliates.   U.S. Coal's subsidiaries fund U.S.
Coal's disbursement account to pay for the expenses of the operating subsidiaries
(such as costs associated with insurance and their bonding obligation) and to
cover U.S. Coal's operating expenses (such as salaries, rent, and utilities).   [Case
No. 14-1020, ECF No. 604, ¶¶ 11-13.]

Even taking into account these general statements, the Amended Complaint fails to

describe any specific transfers from the Subsidiaries to U.S. Coal.   It does not state which

Subsidiary made a transfer to U.S. Coal, the amount each Subsidiary transferred, or the date of

any transfer.   Instead, the Amended Complaint alleges that all transfers occurred via "sweep

accounts."   [Am. Compl. ¶ 3.]   Thus, the Amended Complaint fails to identify challenged

transfers sufficiently under Civil Rule 8:

> Applying [Civil Rule 8] to preference and fraudulent transfer claims, the pleader
> must provide more than a mere recitation of the statutory elements of the cause of
> action.   Instead, the pleader must identify the set of facts upon which he seeks to
> recover.   At the very least, the rules of procedure require the pleader of a
> preferential or fraudulent transfer claim to reasonably identify the types of
> transfers sought to be avoided.   Some courts have held that such identification
> must include the amount and date of the transfers together with the name of the
> transferor and transferee.

*State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 292-93 (Bankr. S.D.

Ohio 2007) (citing *Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.)*, 339

B.R. 570, 575 (Bankr. D. Del. 2006); *Valley Media, Inc. v. Borders, Inc. (In re Valley Media,*

*Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003); *Birdsell v. U.S. West Newvector Group, Inc. (In*

*re Cellular Express of Ariz., Inc.)*, 275 B.R. 357, 363 (Bankr. D. Ariz. 2002)).   Whether a

complaint adequately identifies a particular transfer is determined by asking whether the

defendant could respond to the claims with appropriate affirmative defenses.   *Id.*   Here, because

the Amended Complaint does not identify any specific avoidable transfer from the Subsidiaries

to U.S. Coal, PC cannot assess its potential defenses with respect to any specific transfer from a

Subsidiary to U.S. Coal, including defenses available under § 550(b).[10]

Trustee contends that, while she has not brought an action to avoid the transfers to U.S.

Coal from the Subsidiaries, "all Debtors have entered into reciprocal tolling agreements so that

these matters can be addressed without statute of limitations issues."   [Response ¶ 26.]   But

Trustee has not asserted the basis upon which the transfers from the Subsidiaries to U.S. Coal

*could* be avoided, rendering the Amended Complaint deficient.   *Bash v. Textron Fin. Corp.*, 524

B.R. 745, 755-56 (N.D. Ohio 2015) (stating trustee must adequately allege initial transfer is

avoidable in avoidance and recovery action against subsequent transferee); *see also In re Mich.*

*BioDiesel, LLC*, 510 B.R. at 796-97 (stating trustee must prove initial transfer is avoidable to

recover from subsequent transferee).

As a result, to the extent Trustee seeks relief for actual fraud against PC as a mediate or

immediate transferee under Counts I and III, Trustee has not plead her claims with the necessary

information to state a claim.   The Amended Complaint does not contain required details about

---

[10] In disputing PC's argument that Trustee must plead with specificity the transfers from the Subsidiaries to U.S. Coal, Trustee adopts a "best defense is a good offense" approach.   Trustee charges:

> Defendant essentially disclaims any knowledge that the payments it routinely received directly from U.S. Coal (the only plaintiff who was its client and which it had advised on insolvency) were funded by the Subsidiary Debtors who owed Defendant no funds.   This "head in the sand" approach is not only bold, but entirely unsupportable.[6]
>
> > n.6 A creditor "may not assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it."   *In re Bogstad*, 779 F.2d 370, 372 n.4 (7th Cir. 1985) (quoting *In re Blatz*, 37 B.R. 401, 404-05 (Bankr. E.D. Wisc. 1984)[)].

[ECF No. 32 (the "Response") ¶ 3 n.6.]   Trustee may not shift the burden to plead her claims properly under Civil Rule 8 to PC, nor does Trustee establish compliance with her pleading responsibilities by arguing that PC is "boldly sticking its head in the sand."   In addition, while *Bogstad* may contain the quip Trustee wanted to use to criticize PC, the quote in that case, which concerned a creditor's effort to exclude a debt from discharge as having been obtained by fraud, related to whether a creditor reasonably relied on a debtor's financial statement if it made no attempt to verify its contents.   In other words, Trustee's Response unjustifiably attacks PC, and does so by cavalierly citing a phrase from an opinion that does not bear on the facts presented on this Motion.

On a related note, Trustee's Response to the Motion offers that PC is a "non-Kentucky law firm."   [Response ¶ 8 n.7.]   Simply put, this Court does not view parties or law firms differently owing to where they are located.   Efforts to "remind" the Court of such matters are disfavored.

the underlying transfers from the Subsidiaries to U.S. Coal, or any basis that would permit those transfers to be avoided; rather, Trustee's sole basis to avoid the initial transfers relates to a cash management system that the Court kept in place on *Debtors'* motion.

With regard to Trustee's claims for constructive fraud (Counts II, IV, V and VI) and preferential transfers (Count VII) through which she seeks recovery against PC as a mediate or immediate transferee, the same problem exists.   Blanket allegations that unspecified Subsidiaries generally transferred funds to U.S. Coal are insufficient to plead the facts necessary to state a claim for recovery against Defendant as a subsequent transferee.   PC cannot possibly evaluate or formulate affirmative defenses under § 550(b) relating to its alleged role as a subsequent transferee without the basic information regarding the challenged transfers from the Subsidiaries to U.S. Coal.   Accordingly, the Trustee has failed to state a claim in connection with her constructive fraud and preference claims under which she seeks relief against PC as an immediate or mediate transferee within the meaning of § 550(a)(2).

In sum, Trustee's claims against PC as a mediate or immediate transferee fail to state a claim upon which relief can be granted because the Amended Complaint fails to state a claim for avoidance of transfers from the Subsidiaries to U.S. Coal.

## II.    The Amended Complaint Fails to State Viable Claims Against PC as an Initial Transferee or Beneficiary Transferee of the Subsidiaries.

Subsection 550(a)(1) relates to initial transfers and names two parties from whom recovery may occur: (1) the "initial transferee;" and (2) a party that was not the initial transferee, but one "for whose benefit such transfer was made."   *In re Pocius*, 556 B.R. at 667 (citing 11 U.S.C. § 550).   Trustee seeks to recover from PC under both theories.   [Response ¶ 2(g).]

**A.      The Amended Complaint does not Allege Facts to Support that U.S. Coal may be Considered a Mere Conduit and, thus, no Claim is Stated against PC as an Initial Transferee from the Subsidiaries.**

To the extent the Amended Complaint asserts claims against PC as an initial transferee of a transfer from one of the Subsidiaries, absent allegations that U.S. Coal is a mere conduit, these claims cannot survive Rule 12(b)(6) scrutiny.

> The Code does not define the terms "initial transferee," "immediate transferee" and "mediate transferee."   Generally, the party who receives a transfer of property directly from the debtor is the initial transferee.   However, many courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a "transferee" and, therefore, not the initial transferee.   Rather, these courts have held that the minimum requirement of status as a "transferee" is dominion over money or other assets, or the right to use the money or assets for one's own purposes.

5 COLLIER ON BANKRUPTCY ¶ 550.02[4][a] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).   This analysis corresponds with Sixth Circuit precedent.   *In re Hurtado*, 342 F.3d at 533 ("An initial transferee must have 'dominion' over the funds to be an 'initial transferee' under the statute."); *In re Baker & Getty Fin. Servs., Inc.*, 974 F.2d at 722 (stating an initial transferee must have dominion over funds and the legal right to use them for its own purpose).

> [W]e think the minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes. When A gives a check to B as agent for C, then C is the "initial transferee"; the agent may be disregarded.

*Hurtado*, 342 F.3d at 533 (alteration in original) (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).

Trustee argues that provisions in the settlement agreement between U.S. Coal and PC and related documents "mandated U.S. Coal pay Defendant $600,000.00 up front and then $45,000.00 monthly" and, thus, it is plausible that U.S. Coal lacked discretion or control over the funds it swept daily from the Subsidiaries' accounts.   [Response ¶ 28.]   But the mere existence of a contract with payment terms does not support a plausible inference that U.S. Coal was a

mere conduit with no discretion over the funds.    The cornerstone of the conduit analysis is that

the transfer to the conduit will be disregarded because the conduit has no control over the funds

it receives.    *See*, *e.g.*, *Hurtado*, 342 F.3d at 534 n.2 ("entities will be considered 'mere conduits'

if and only if they lack dominion and control over the relevant funds.").    Under Trustee's

argument, however, virtually every entity that held a contractual payment plan from U.S. Coal is

an initial transferee of an unidentified Subsidiary Debtor.    This position lacks merit.

Moreover, the Amended Complaint does not set forth any facts from which a plausible

inference can be drawn that U.S. Coal lacked discretion in the use of funds swept into the Cash

Management System from the Subsidiaries, or that U.S. Coal was bound to disburse the funds

only in accordance with instructions from the Subsidiaries (or any of them).    In fact, the Cash

Management Motion referenced in the Amended Complaint expressly contradicts the premise

that U.S. Coal had no discretion.

The Amended Complaint fails to state a factual basis for a plausible inference that U.S.

Coal was a mere conduit of the Subsidiaries.    In fact, the pleading is devoid of any facts plead to

support the bare legal position that U.S. Coal was a mere conduit.    Thus, the actual fraud,

constructive fraud, and preferential transfer claims seeking recovery from PC based on its receipt

of transfers as an initial transferee of the Subsidiaries all fail to state a claim upon which relief

can be granted.

**B.    As PC is not Plausibly Alleged to be the "Entity for Whose Benefit the
Challenged Transfers were Made" by the Subsidiaries Within the Meaning
of Section 550(a)(1), Trustee also Cannot Recover from PC on her Avoidance
Claims Under this Theory.**

The Amended Complaint also fails to allege facts under which the Court plausibly can

infer that PC was the entity for whose benefit any of the alleged Cash Transfers from the

Subsidiaries to U.S. Coal were made under § 550(a)(1).    To recover an avoided transfer from a

party as "the entity for whose benefit such transfer was made," a trustee must establish that the

debtor intended to benefit that party by making the transfer, and also that the party actually received a benefit from the transfer.   *Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829, 834 (Bankr. E.D. Mich. 2006).   As the Ninth Circuit has stated:

> Our recent opinion in *Bullion Reserve* makes clear that a "subsequent transferee cannot be an entity for whose benefit the initial transfer was made, even if the subsequent transferee actually receives a benefit from the initial transfer." [*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 548–49 (9th Cir. 1991) (citing *Bonded Fin. Servs. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988) ("'Someone who receives the money later on is not an 'entity for whose benefit such transfer was made'; only a person who receives a benefit from the initial transfer is within this language.'")).

*Lippi v. City Bank*, 955 F.2d 599, 611 (9th Cir. 1992).   In other words, one cannot be an entity for whose benefit a transfer is made under § 550(a)(1) and also a subsequent transferee under § 550(a)(2).   This analysis makes sense; a contrary finding would create confusion as to whether the transferee at issue is entitled to the protections afforded only to a subsequent transferee under the safe harbor provisions of § 550(b).   *See also Valley X-Ray Co. v. VPA, P.C.*, 360 B.R. 254, 260-61 (E.D. Mich. 2007) ("If [§ 550(a)(1)] were meant to permit recovery from a party whom the debtor did not intend to benefit, then the text could say that recovery is permissible from any entity who benefitted from the initial transaction. It does not say this….").

The Amended Complaint does not identify any transfers from the Subsidiaries to U.S. Coal made to bestow a benefit on PC; again, all such transfers allegedly derived from "sweep accounts," and the periodic nature of sweep transactions belie the notion of a specific intended beneficiary.   As a result, the Amended Complaint fails to state a plausible claim for fraud under any theory premised upon recovery from PC as the entity for whose benefit any transfers from the Subsidiaries to U.S. Coal were made.

### III.    The Amended Complaint Fails to State a Claim for Actual Fraud based on PC as an Initial Transferee of U.S. Coal.

As stated above, Counts I and III seek avoidance and recovery of payments premised on actual fraud.   Count I seeks avoidance of payments from July 16, 2010 to "the filing of the involuntary bankruptcy" and recovery of $1,633,286.18 under K.R.S. § 378.010 and §§ 544(b)(1) and 550(a)(1).   [Am. Compl. ¶ 86.]   Count III seeks avoidance of payments totaling $1,275,000.00 ("payments to [PC] under the Settlement Agreement") paid within two years before the "Petition Date" under § 548(a)(1)(A).[11]

The heightened standard set forth in Civil Rule 9(b), made applicable to this adversary proceeding under Bankruptcy Rule 7009, applies to intentional fraudulent transfer claims where those claims are premised on a transferor-debtor's actual intent to defraud.   *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 260 (Bankr. E.D. Mich. 2009).   "'Allegations that a debtor made an aggregate amount or series of cash or other transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim.'"   *Id*. at 261 (quotation omitted).   In other words, "[i]t is not the fraudulent intent of the debtor that must be pled with particularity; rather it is the 'circumstances constituting fraud.'"   *Id.* at 262.   "For allegations of fraud, Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"   *Liquidating Tr. of App Fuels Creditors Trust v. Energy Coal Res., Inc. (In re Appalachian Fuels, LLC)*, Ch. 11 Case No. 09-10343, AP No. 11-1041, 2012 Bankr. LEXIS 4289, at *11 (Bankr. E.D. Ky. Sept. 14, 2012).

---

[11]  As noted above, petitions for U.S. Coal and for the Subsidiaries were not all filed contemporaneously.   The Complaint does not clarify the meaning of the phrase "the filing of the involuntary bankruptcy" or define the term "Petition Date" with regard to any specific debtor.   [Am. Compl. ¶¶ 86, 101.]   The Court interprets "Petition Date" as used in this section to be June 10, 2014, the filing date of the U.S. Coal involuntary chapter 11 petition.

Trustee argues [Response ¶ 12] that courts within this Circuit have stated that Civil Rule 9(b) "is applied somewhat more liberally to bankruptcy trustees…."    *In re Motorwerks*, 371 B.R. at 295.    Even with this in mind, however, those courts do not hold that Civil Rule 9(b) does not apply to bankruptcy trustees at all; rather, "a defendant is still entitled to notice of his alleged misconduct and, as such, trustees remain responsible for pleading actual fraud with precision." *Id*. (citations omitted) (requiring amendment of trustee's complaint in compliance with Civil Rule 9(b) to the extent trustee's claims are based in whole or in part on actual fraud); *see also U.S. ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) ( "In all averments of 'fraud or mistake,' the plaintiff must state with 'particularity the circumstances constituting fraud or mistake.' Fed. R. Civ. P. 9(b)" and "[w]e have no more authority to 'relax' the pleading standard established by Civil Rule 9(b) than we do to increase it.").

Trustee's actual fraud claims, to the extent plead against PC as an initial transferee from U.S. Coal, also suffer from fatal deficiencies.

### A.    Because the Amended Complaint does not Identify Challenged Transfers with Specificity, Trustee Fails to State a Claim for Actual Fraud.

As discussed above, the Amended Complaint does not identify any specific challenged transfer, and instead lumps all transfers from U.S. Coal to PC together via a total dollar amount:

> In total, Defendant billed U.S. Coal $5,182,426.89 during the course of its representation of U.S. Coal.    Of that amount, Defendant was paid by U.S. Coal, using funds of the Subsidiary Debtors approximately $2,726,948.03 prior to June 27, 2011. U .S. Coal's records show that all payments were made directly by U.S. Coal and Defendant should have its own records to show the identity of the transferor.    After June, 2010 – as shown below a watershed series of events – U.S. Coal's records show a total amount of $1,633,286.18 paid to Defendant. These are the funds the Trustee seeks to recover in this action and will allocate to the original transferors.    [Am. Compl. ¶ 44.]

The Amended Complaint lacks any other data concerning the challenged transfers totaling $1,633,286.18 from U.S. Coal to PC.    Notwithstanding the plausible inference that U.S. Coal is the transferor and PC is the transferee, and the general statement that there was a "lack of

consideration associated with Total Transfers of Subsidiary Debtors' property to" PC [*id*. ¶ 87],

the pleading does not contain any dates or amounts of the alleged fraudulent transfers.   This

information is strictly required in the context of claims of actual fraud "to give the answering

party notice of the misconduct that is being challenged."   *In re Motorwerks*, 371 B.R. at 294

(stating that Civil Rule 9(b), incorporated into adversary proceedings under Bankruptcy Rule

7009, requires pleading of fraud with particularity); *see also Giuliano v. U.S. Nursing Corp. (In

re Lexington Healthcare Group, Inc.)*, 339 B.R. 570, 575 (Bankr. D. Del. 2006) ("a plaintiff is

required to put the defendant on notice as to the basics of the plaintiff's complaint" and to "'set

forth the facts with sufficient particularity to apprise the defendant fairly of the charges made

against him so that [he] can prepare an adequate answer.'" (citation omitted)).

> [W]hen a plaintiff's intentional fraudulent transfer claim is premised on a debtor's actual intent "to defraud," Rule 9(b) does apply, and the plaintiff must plead the "circumstances constituting fraud" with particularity.
>
> In order to meet this requirement in this context, a plaintiff must allege the following, for each transfer:
>
> • the date of the transfer;
>
> • the amount of the transfer (or if the transfer was of property other than money, the property that was transferred and its value);
>
> • the name of the transferor;
>
> • the name of the initial transferee; and
>
> • the consideration paid, if any, for the transfer.

*In re NM Holdings*, 407 B.R. at 261.

Because the Amended Complaint does not identify the date or amount of any transfer

from U.S. Coal to PC, the actual fraud claims fail to satisfy Civil Rule 9(b).   To the extent

Counts I and III seek recovery from PC for actual fraud as an initial transferee of the Cash

Transfers from U.S. Coal, Counts I and III may be dismissed on this ground.

**B.      Because the Amended Complaint does not Sufficiently Address the Trustee's Obligation to Plead that U.S. Coal made Transfers with the Intent to Hinder, Defraud, or Delay, Trustee Fails to State a Claim for Actual Fraud.**

In addition to the failure to identify even one allegedly fraudulent transfer from U.S. Coal to PC with particularity, Counts I and III fail because Plaintiff has not sufficiently plead that U.S. Coal made the challenged transfers with an intent to hinder, delay, or defraud creditors.   Under the Code, Trustee may avoid transfers based on actual fraud in certain circumstances:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> > (A)  made such transfer or incurred such obligation *with actual intent to hinder, delay, or defraud* any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ….

11 U.S.C. § 548(a)(1)(A) (emphasis added).   Thus, the Trustee must allege: "(1) a transfer of an interest of the debtor's property or the incurring of an obligation; (2) made on or within [two years] of the petition date; and (3) with actual fraudulent intent."   *Scherer v. Quality Communs., Inc. (In re Quality Communs., Inc.)*, 347 B.R. 227, 233 (Bankr. W.D. Ky. 2006).

Similarly, until 2016, Kentucky law provided:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, *made with the intent to delay, hinder or defraud* creditors, purchasers or other persons, and every bond or other evidence of debt given, action commenced or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons.   This section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

KY. REV. STAT. § 378.010 (emphasis added) (repealed Jan. 1, 2016).   To prevail under K.R.S. § 378.010, the Trustee must prove U.S. Coal transferred the property to PC with an intent to delay, hinder or defraud creditors by clear and convincing evidence—the burden of persuasion

associated with actual fraud.   *Russell County Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311

(Ky. 1975).

Thus, to survive a motion filed under Civil Rule 12(b)(6), Counts I and III both require

allegations supporting a plausible inference of transferor U.S. Coal's intent to hinder, delay and

defraud.   PC argues that Trustee has not plead sufficient plausible facts, and Trustee counters

that she has plead sufficient "badges of fraud" from which the requisite intent may be inferred.

Fraudulent intent may be inferred from circumstantial evidence including the following

badges of fraud recognized under Kentucky law:

> Badges of fraud exist when: (1) the transfer or conveyance is between persons
> who are related or occupy a confidential relationship; (2) where the transfer or
> conveyance contains false statements and recitals as to consideration; (3) where
> the transfer or conveyance is made by a debtor in anticipation of a suit against
> him or after a suit has begun or is pending against him; and (4) where the transfer
> or conveyance is made by a debtor who transfers all or any appreciable part of his
> property when he is insolvent or financially embarrassed.

*Jadco Enters. v. Fannon*, Civil Action No. 6:12-225-DCR, 2013 U.S. Dist. LEXIS 162717, at

*35-37 (E.D. Ky. Nov. 15, 2013) (citing *Kimbler*, 520 S.W.2d at 311).   Here, Trustee argues

she has plead a factual basis for badges two, three and four quoted above, as well as two

additional badges: the transfers preferred PC's interest over other creditors "to hinder, delay or

defraud the other creditors," and inadequacy of consideration.   [Response ¶ 10.]

**Badge One - False Statement of Consideration:**   As to the first claimed badge, Trustee

alleges that the security agreement the Subsidiaries executed contains false statements of

consideration because the Subsidiaries did not owe a debt to PC.   This alleged badge, however,

only relates to the Subsidiaries' grant of security, not the Cash Transfers.   Thus, it lacks

relevance to the claims subject to the Motion.

**Badge Two - Transfers in Anticipation of Litigation:**   Next, Trustee states that the

anticipated litigation in advance of the Cash Transfers was the potential for an involuntary

bankruptcy filing.   The Amended Complaint alleges no facts from which this badge of fraud plausibly may be inferred.   Trustee points to Paragraphs 46 to 53 of her pleading, contending they allege facts to support this badge, but they do not.   The first several of these paragraphs allege that PC became aware in early to mid-2010 that "certain holders of 'put options' issued by U.S. Coal were threatening to put U.S. Coal into involuntary bankruptcy" in that time frame, and that a PC attorney advised U.S. Coal in June 2010 that "holders of the put options could potentially file a successful involuntary petition against U.S. Coal and the Subsidiary Debtors." [Am. Compl. ¶¶ 46-49.]   Paragraphs 50 to 53 contain allegations that "[t]hroughout 2010, and through the end of the engagement in 2011," PC knew that U.S. Coal and the Subsidiaries faced the possibility of an involuntary bankruptcy filing.   [*Id*. ¶¶ 50-53.]   Then, Paragraphs 54 to 56 discuss PC's lawsuit against U.S. Coal filed in September 2011 resulting in PC's judgment against U.S. Coal.

In other words, the allegations in Paragraphs 46 to 53 concern matters, including alleged threats of involuntary bankruptcy, occurring between early 2010 and mid-2011 about which PC had knowledge.   However, PC did not receive its first payment under the settlement agreement with U.S. Coal until March 2013, nearly two full years later.   There is no allegation that payments made starting in March 2013 were done in anticipation of potential litigation contemplated, at the latest, in the summer of 2011.   Further, these Paragraphs concern *PC's knowledge* of Debtors' financial positions in this period, but do not speak to *U.S. Coal's intent* in making any one of the Cash Transfers.   For both reasons, this "badge of fraud" is implausible.

**Badge Three - Debtors' Insolvency when Making the Transfers**:   Trustee also asserts that the Amended Complaint's allegation of Debtors' insolvency at all times after July 2010 is a well-plead badge of fraud.   The Court disagrees.   First, a mere statement of insolvency without factual support is insufficient, as discussed further below.   *Sarachek v. Right Place Inc. (In re*

20

*Agriprocessors, Inc.)*, Ch. 7 No. 08-2751, AP No. 10-09123, 2011 Bankr. LEXIS 3671, at *17-

18 (Bankr. N.D. Iowa Sept. 30, 2011).   Second, this badge also requires factual allegations that a

debtor transferred all or any appreciable part of its property when it was insolvent.   *Jadco*

*Enters.*, 2013 U.S. Dist. LEXIS 162717, at *35-36.   As stated above, the Amended Complaint

fails to identify the amount of any transfer and it fails to plead facts suggesting that the Cash

Transfers constituted "all or any appreciable part of [Debtors'] property" even assuming Debtors,

or any one of them (i.e., U.S. Coal), were insolvent during the entire period stated in the

Amended Complaint.

**Badge Four - Transfers Made to Prefer One Creditor over Others:**   To support

Trustee's next claimed badge of fraud, that U.S. Coal preferred PC over other creditors by

making the Cash Transfers with the intent to hinder, delay and defraud U.S. Coal's other

creditors, she relies heavily on another federal district court decision for the proposition that

Kentucky recognizes that "badges of fraud" include

> transfers made to prefer one creditor's interest over others in order to hinder,
> delay or defraud the other creditors, such as in this case, where the Subsidiary
> Debtors, either directly or indirectly, paid U.S. Coal's "obligation" to the
> Defendant which hindered, delayed and defrauded its own legitimate creditors.
> (Compl. ¶¶ 38, 57, 86, 87, 94, 103, and 104).   *See Jadco Enterprises, Inc. v.*
> *Fannon*, 991 F. Supp. 2d [947,] 953 [(E.D. Ky. 2014)] ("While the defendants
> argue that the existence of a pre-existing debt protects them from the claim of
> fraud, they are incorrect, for the reasons outlined above. Once the burden has
> shifted to them they must rebut that burden by showing the good faith and
> adequate consideration of the transactions in question, which they have failed to
> do."); *Joyeux v. Anderson-Dulin-Varnell Co.*, 213 Ky. 658, 281 S. W. 796 (Ct[.]
> App. Ky. 1926)[.]

[Response ¶ 10(d).]   Trustee's reliance is misplaced.   In this opinion, the district court held that

even where the challenged transfer was a payment on a preexisting debt, this did not preclude a

claim that there was fraudulent intent behind the transfer: "The correct analysis first looks at the

badges of fraud, followed by the validity of pre-existing debt.   The fact finder should then

determine if there was any fraudulent intent behind the transfer(s).    The analysis does not end

once evidence of pre-existing debt is offered."    *Jadco Enterprises, Inc.*, 991 F. Supp. 2d at 953.

In this case, however, Trustee's Amended Complaint does not contain plausible, well-

plead factual allegations supporting the notion that U.S. Coal paid PC to hinder, delay or defraud

other creditors.[12]    Instead, the allegations in the Amended Complaint that Trustee cites to

support this badge of fraud (found in Paragraphs 38, 57, 86, 87, 94, 103, and 104) confirm the

inadequacy of her pleading:

- Paragraph 38 does not allege that U.S. Coal paid PC in an effort to prefer PC over other creditors.    Rather, this Paragraph alleges that "Debtors', officers' and directors' primary objective in the operation of the Debtors was to ensure payments to *themselves* and *any related creditors* and delay payments to *all other creditors to hinder delay and/or defraud them* in order to ensure funds were available to pay *insiders* and *other critical creditors*."    [Am. Compl. ¶ 38 (emphasis added).]    The Amended Complaint does not allege that PC was one of these "insiders and other critical creditors."

- Paragraph 57 asserts that, after PC obtained its judgment against U.S. Coal, U.S. Coal moved its assets *to prevent PC from attaching them.*

- Paragraphs 86 and 103 assert bare legal conclusions—belied by facts alleged earlier in the Amended Complaint—that the Cash Transfers to PC were made "with the intent to delay, hinder, and defraud U.S. Coal and/or the Subsidiary Debtors' other creditors" and "with the actual intent to hinder, delay, or defraud entities to which the Subsidiary Debtors were or became indebted to…."    [*Id.* ¶¶ 86, 103.]    The Court may not accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations" as true.    *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

- Finally, Paragraphs 87, 94, and 104 allege that one badge of fraud supporting Trustee's actual fraud claim is that PC knew that U.S. Coal and the Subsidiaries paid "favored or insider creditors as opposed to other legitimate creditors."    [Am. Compl. ¶¶ 87, 94, 104.]

---

[12] Trustee cites both the *Jadco* decision and the Kentucky Court of Appeals' decision in *Joyeux v. Anderson-Dulin-Varnell Co.*, 281 S.W. 796 (Ky. 1926), to establish a legal basis for this badge of fraud.    The *Joyeux* decision stands for the following proposition related to an old Kentucky statute regarding conveyances made to prefer one creditor over others in contemplation of insolvency:

> It is essential to state a cause of action under section 1910 to allege that the debtor, at the time he made the conveyance, or engaged in the transaction assailed in the pleading as the basis of the action, was insolvent, not at the time of filing the pleading, and that it was made or engaged in by him in contemplation of insolvency with the design or intent to prefer one or more of his creditors as against the rest.

*Grand Lodge of Kentucky v. First Nat'l Bank*, 64 S.W.2d 474, 476 (Ky. 1933) (citing *Joyeux*).    The *Joyeux* decision does not change the Court's analysis regarding the pleading deficiencies in the Amended Complaint related to this alleged badge of fraud.

These Paragraphs do *not* allege that PC was one of those "favored or insider creditors." In fact, any such allegation would contradict the assertion in Paragraph 57 that U.S. Coal moved assets to impede PC's ability to collect.

Therefore, taking into account each Paragraph of the Amended Complaint that Trustee cites to show that she alleged this badge of fraud sufficiently, it is evident that the pleading does not assert facts supporting the premise that U.S. Coal made Cash Transfers intending to prefer PC and hinder, delay or defraud other U.S. Coal creditors.

**Badge Five - Inadequacy of Consideration:** Finally, as to the last asserted badge concerning the Cash Transfers from U.S. Coal to PC, and accepting the Amended Complaint's well-pleaded factual allegations as true, there is no inadequacy of consideration or legitimate challenge to the validity of the debt U.S. Coal owed to PC, which arose from a state court judgment concerning unpaid legal fees.   There are no allegations of secret or hurried transactions not in the usual mode of doing business, the use of dummy or fictitious parties, a reservation of benefits by U.S. Coal, control or dominion of property by U.S. Coal, or the like. *Schilling v. Montalvo (In re Montalvo)*, 324 B.R. 619, 623 (Bankr. W.D. Ky. 2005).   Rather, as Trustee alleges, the payments from U.S. Coal to PC relating to the settlement agreement clearly were made for valuable consideration—the dollar-for-dollar reduction of debt—under a contract.

Counts I and III fail to pass Rule 12(b)(6) scrutiny with regard to the Cash Transfers. The transfers at issue are not identified adequately, and the Amended Complaint does not plead either facts or badges of fraud necessary to form a plausible basis from which U.S. Coal's requisite intent to hinder, defraud, or delay can be inferred in connection with any alleged transfer to PC.

**IV.     The Amended Complaint Fails to State a Claim for Constructive Fraud based on PC as an Initial Transferee of U.S. Coal.**

Counts IV, V and VI also seek recovery under subsections of § 548(a)(1)(B)(ii).   This section provides, in pertinent part:

(a)    (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(B)    (i)  received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I)  was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)  intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV)  made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548.   In addition, Count II seeks relief under § 544 and K.R.S. § 378.020.   The Kentucky statute (now repealed) stated: "Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge."   KY. REV. STAT. § 378.020 (repealed Jan. 1, 2016). Trustee seeks to recover from PC under these constructive fraud statutes based on the theory that PC was the initial transferee of the Cash Transfers from U.S. Coal.[13]

---

[13] The Amended Complaint does not specify the amount sought under the constructively fraudulent transfer theories; presumably, the amounts are the same as under the actual fraud theories.

Although the Sixth Circuit has not spoken on this issue, several courts within this Circuit have held that Civil Rule 9(b) does not apply to claims for constructive fraud because intent or deceit is not an element of the claim.   *See, e.g.*, *In re NM Holdings*, 407 B.R. at 259; *In re Motorwerks*, 371 B.R. at 295; *Russell v. Little (In re Anderson)*, Ch. 7 No. 10-50757, AP No. 10-5081, 2010 Bankr. LEXIS 4395, at *9-10 (Bankr. E.D. Tenn. Dec. 1, 2010).   Nevertheless, courts that have applied a less stringent pleading standard to constructive fraud claims still require that the pleading asserting such claims must identify the transfers to be avoided:

> Under *Iqbal* and *Twombly*, Trustee's claim for constructively fraudulent transfers must allege sufficient facts that plausibly show: (i) a transfer within the applicable time period, (ii) a lack of reasonably equivalent value (or fair consideration), and (iii) debtor's insolvency during the relevant time period.   A mere recitation of the three legal elements is inadequate to establish a plausible factual basis. …
>
> The first element Trustee must sufficiently plead is the debtor made a transfer to defendant within two years before the petition filing date.   To adequately plead this element Trustee needs to recite sufficient factual information, including the date of the transfer, the amount of the transfer, the name of the transferor, and the name of the transferee.

*In re Agriprocessors, Inc.*, 2011 Bankr. LEXIS 3671, at *13-15 (citations omitted).   In other words, even claims plead to avoid transfers that are subject to review under Civil Rule 8 (including constructive fraud and preference claims) must include "sufficient factual information" regarding the transfers to state a plausible claim.

With regard to all four counts, PC argues that the Amended Complaint lacks details regarding any of the Cash Transfers from U.S. Coal to PC.   The Amended Complaint, however, does contain some allegations and attach some pertinent information regarding what appears to be many, but not all, of the Cash Transfers.   More specifically, payments made related to the March 2013 settlement agreement and note are somewhat discernible, but no payments

preceding the settlement agreement are identified.[14]    [Am. Compl. ¶¶ 59, 65, 66; Exh. F at 37.]

Nevertheless, this does not end the inquiry with regard to the sufficiency of Trustee's pleading.

    To state a claim to avoid constructively fraudulent transfers from U.S. Coal to PC and

recover from PC as the initial transferee, Trustee also must allege facts which plausibly show

that U.S. Coal received "less than a reasonably equivalent value in exchange for such transfer[s]"

(11 U.S.C. § 548(a)(1)(B)(i)) or that transfers were made "without valuable consideration" (KRS

§ 378.020).    On that score, Trustee only argues that the *Subsidiaries* "received no value of any

type from" PC.    [Response ¶¶ 15-18.]    Trustee does not identify, and the Court has not found in

the Amended Complaint, any allegation that *U.S. Coal* did not "receive reasonably equivalent

value" in connection with the Cash Transfers; in fact, Trustee references and attaches invoices

for work PC performed to her Amended Complaint [Am. Compl. ¶ 33, Exh. E], and alleges "the

work performed by Defendant after June, 2010 may have provided some value to U.S. Coal."

[*Id.* ¶ 3.]    Payment of valid antecedent debt, as a matter of law, is not a constructively fraudulent

transfer as dollar-for-dollar reduction of indebtedness amounts to "reasonably equivalent value"

and "consideration" under the pertinent statutes.    11 U.S.C. § 548(d)(2)(A) ("satisfaction of . . .

antecedent debt" constitutes "value"); *In re Southeast Waffles, LLC*, 702 F.3d 850, 855 (6th Cir.

2012) (stating "dollar-for-dollar reduction in debt is sufficient to establish equivalent value for

purposes of the fraudulent transfer statutes"); *In re Wilkinson*, 196 Fed. Appx. 337, 343-44 (6th

Cir. Aug. 17, 2006) (unpublished) ("dollar-for-dollar reduction in debt" constitutes "reasonably

equivalent value" and "valuable consideration").    As a result, Trustee fails to establish that the

---

[14] Paragraph 36 of the Amended Complaint does state: "On February 24, 2009, U.S. Coal transferred to the
Defendant $1,100,000, that was apparently not for the purpose of paying any legal fees.    Defendant has refused to
provide any records as to whether it was acting as a conduit or was a transferee of this payment."    [Am. Compl. ¶
36.]    But the Trustee does not seek to recover this payment, as it does not fit within the definition of the Cash
Transfers in the Amended Complaint.    Thus, this Paragraph is unrelated to any cause of action pled in the Amended
Complaint, and it is unclear why it is included in the pleading.

Amended Complaint plead a necessary element of its constructively fraudulent transfer claims

against PC.

Further, to plead the constructively fraudulent transfer claims sufficiently, Trustee must

allege facts to plausibly establish that U.S. Coal was insolvent *when it made* the Cash Transfers.

11 U.S.C. § 548(a)(1)(B)(ii)(I).   Trustee argues that the Amended Complaint satisfies this

pleading requirement because it "quite plainly alleges that U.S. Coal and each of the Subsidiary

Debtors was insolvent from both a balance sheet test and 'not meeting their debts as they came

due' test during the time period covered by the Complaint.   *See* Complaint at ¶¶ 2, 39, 46-53,

62, 112, 136."   [Response ¶ 19.]   None of these cited Paragraphs provide specificity with regard

to U.S. Coal's insolvency on an identified date of even one transfer.

> [A] trustee's complaint cannot merely make a conclusory statement that a debtor
> was insolvent.   *In re Gluth Bros. Const., Inc.*, 424 B.R. 368 (Bankr. N.D. Ill.
> 2009).   A complaint must contain enough factual information to plausibly show
> the debtor's liabilities exceeded assets at the time of the transfers.   *In re Saba
> Enters., Inc.*, 421 B.R. 626, 646 (Bankr. S.D.N.Y. 2009); [*Russell v. Little (In re
> Anderson)*, Ch. 7 No. 10-50757, AP No. 10-5081,] 2010 Bankr. LEXIS 4395, [at
> *7-8] (*citing Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 123-24
> (Bankr. D. Del. 2008) (finding insolvency adequately pleaded where the
> complaint alleged facts showing that debtor's liabilities exceeded their assets as of
> the date of the transfer)); *[s]ee also [In re Charys Holding Co.*, 443 B.R. 628,]
> 636 [(Bankr. D. Del. 2010)] (providing balance sheet information that did not
> reflect insolvency, but further alleged that the intangible goodwill entry was
> rendered valueless by independent contractors and that the tangible net assets
> were overvalued at the time of the transfers).

*In re Agriprocessors, Inc.*, 2011 Bankr. LEXIS 3671, at * 17-18.

Moreover, Trustee's argument that Paragraphs 46-53 of the Amended Complaint

(discussed above) specifically support the allegation of insolvency as they "relate to the

**Defendant** providing legal advice in June of 2010 to U.S. Coal regarding its insolvency" also

lacks merit.   [Response ¶ 20 (emphasis in original).]   As explained previously, these Paragraphs

contain allegations relating to advice PC gave to U.S. Coal from early 2010 through June 2011—

but the only somewhat identifiable Cash Transfers at issue did not commence until after the

settlement agreement's execution in March 2013, nearly two years later.   Trustee does not

explain how averments relating to the time period from early 2010 through June 2011 also allege

that U.S. Coal was insolvent on the date of every payment U.S. Coal made to PC in and after

March 2013.

For all of these reasons, the Amended Complaint fails to state a claim for constructively

fraudulent transfers to PC as the initial transferee from U.S. Coal.

**V.      The Amended Complaint States a Claim against PC as an Initial Transferee of
Preferential Transfers under Section 547.**

Count VII asserts a claim against PC under § 547 for transfers made to PC on or within

90 days before the "Petition Date," *i.e.*, the Preference Payments.[15]   No paragraph in the

Amended Complaint details any aspects of any specific transfer to be avoided; the Paragraph

with the most information about the Preference Payments states "[w]ithin 90 days prior to the

entry of the Order of Relief, U.S. Coal paid the Defendant $135,000.00."   [Am. Compl. ¶ 66.]

Therefore, as with all of the Cash Transfers discussed above, the Preference Payments are not

identified specifically by transferor, date, or amount.   PC moves to dismiss on that ground and

Trustee's Response on the Motion omits argument regarding Count VII.

As noted above, the *Motorwerks* court made clear that Civil Rule 8 requires more than

just pleading the barebones elements of a preferential transfer claim so that the defendant can

formulate its answer to the complaint and assert affirmative defenses.   *In re Motorwerks, Inc.*,

371 B.R. at 292-93, 294.   However, in a case involving avoidance of preferential transfers from

multiple debtors, the court in *NM Holdings* declined to require the details of *each* transfer:

The Original Complaint informed Defendants that Plaintiffs sought to avoid and
recover preferential transfers under 11 U.S.C. §§ 547(b) and 550(a).   Through the

---

[15]  Again, Trustee does not define the term "Petition Date" in connection with Count VII.   [Am. Compl. ¶ 132.]
The Court interprets "Petition Date" as used in this section to be June 10, 2014, the filing date of the U.S. Coal
involuntary chapter 11 petition.

allegations set forth in a table, the Original Complaint identified (1) the name of each debtor/transferor; (2) the name of each defendant/transferee; (3) the form of transfers (checks); and (4) *the total amount of the alleged preferential transfers made by a particular debtor/transferor to each defendant/transferee*.   This provided ample and fair notice to each of the Defendants of "what the plaintiff's claim is and the grounds upon which it rests," as required by *Conley v. Gibson.* And Defendants were not unduly hindered in their ability to file an answer and to assert any pertinent affirmative defenses.   Further, to the extent Defendants were unable to *fully* defend themselves or *fully* assert possible defenses because of any details missing from the Original Complaint, the Civil Rules gave them ways to cope with the problem.   Defendants could seek full details about the transfers in discovery, and then amend their answers if necessary.   The Court concludes that the Original Complaint met the liberal pleading requirements of Civil Rule 8(a).

*In re NM Holdings, Inc.*, 407 B.R. at 256 (first emphasis added) (citation omitted).

Here, with regard to the Preference Payments, and in light of the Court's rulings as stated above, Trustee may pursue the claim against PC as the initial transferee of transfers from U.S. Coal.   The Amended Complaint alleges the total of the transfers to be $135,000 within a 90-day window of the "Petition Date."   It further alleges that U.S. Coal "promptly made regular payments" to PC in connection with the promissory note (excepting one payment "at the same time [LR Mining] was being placed into involuntary bankruptcy" in May 2014), and Trustee attached a payment schedule for $45,000.00 monthly payments related to that note to the Amended Complaint.   [Am. Compl. ¶65, Ex. F at 37.]   With these allegations and the Exhibit, PC can assert its defenses to Count VII and use discovery methods to discern whether additional facts exist to defend itself against this claim.

## VI.    Trustee is not Granted Leave to Amend to Address the Pleading Deficiencies in the Amended Complaint.

In her Response to this Motion, Trustee states: "Even if this Court finds that the Plaintiffs have failed to properly plead a claim, which they have not, the proper remedy is not dismissal of the claims.   Instead, this Court should order that the Plaintiffs [*sic*] amend the Complaint to cure any defects in the pleading."   [Response ¶ 14 (citation omitted).]   Notwithstanding this reference in the Response, Plaintiff has not moved for leave to file a second amended complaint

or provided a draft of a new pleading.    Moreover, this statement in the Response does not assert

the grounds for relief upon which Trustee relies to support the request to further amend.

> Requesting leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R.
> Civ. P. 7(b), which requires that a motion "shall state with particularity the
> grounds therefor . . . ."    *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir.
> 1993).    In her responses to the defendants' motions to dismiss and for summary
> judgment, [the plaintiff] requested leave to amend in a single sentence without
> providing grounds or a proposed amended complaint to support her request.    She,
> therefore, did not state the grounds with particularity.    *See Confederate Mem.*
> *Ass'n, Inc. v. Hines*, 301 U.S. App. D.C. 395, 995 F.2d 295, 299 (D.C. Cir. 1993)
> ("We agree with several of our sister circuits that a bare request in an opposition
> to a motion to dismiss--without any indication of the particular grounds on which
> amendment is sought . . .--does not constitute a motion within the contemplation
> of Rule 15(a)."); *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699, 91
> Fed. Appx. 418 (6th Cir. 2004); *Begala v. PNC Bank*, 214 F.3d 776, 783-84 (6th
> Cir. 2000); *accord United States ex. rel. Willard v. Humana Health Plan of Tex.*,
> 336 F.3d 375, 387 (5th Cir. 2003); *Credit Chequers Info. Servs. v. CBA, Inc.*,
> 2000 U.S. App. LEXIS 996, No. 99-7600, 2000 WL 232046, at *1 (2d Cir. Jan.
> 26, 2000).

*Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006).

Under Civil Rule 15, with leave of the court, a party may further amend its pleadings

after its first amendment (permitted "as a matter of course").    Such leave is to be given freely

"when justice so requires."    FED. R. CIV. P. 15(a)(2).    This Court has discretion as to whether to

permit further amendment, which discretion is limited by the liberal policy of amendments set

forth in Civil Rule 15.    *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)

(citations omitted).    When deciding whether to permit additional amendments, courts may

consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving

party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the

opposing party, and futility of amendment."    *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479,

484 (6th Cir. 1973).

The Bankruptcy Appellate Panel for this Circuit affirmed a bankruptcy court's refusal to

permit a chapter 7 trustee to file a second amended pleading in *Lyon v. Rappaport (In re*

*ClassicStar, LLC)*, Case No. 10-8509, 2011 Bankr. LEXIS 558 (B.A.P. 6th Cir. Feb. 24, 2011).

In that case, the Panel found that the bankruptcy court "did not abuse its discretion when it

denied the trustee leave to file a second amended complaint to the extent this denial was based

on the trustee's failure to plead actual fraud in the first amended complaint."  *Id.* at *13.   The

Panel relied on a Sixth Circuit decision regarding permission to amend to cure deficiencies:

"'The relevant issues in our inquiry are (1) whether [the party seeking amendment] had sufficient

notice that his amended complaint was deficient, and (2) if so, whether [he] had an adequate

opportunity to cure the deficiencies.'"   *Id.* at *14 (quoting *U.S. ex rel. Bledsoe v. Cmty. Health

Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003)).   Applying these factors, the Panel explained:

> Here, the trustee had both sufficient notice of the deficiency and an opportunity to
> cure.   After identifying the deficiency with the original complaint, the court gave
> the trustee 30 days to file an amended complaint to assert a claim for actual fraud
> under § 548(a)(1)(A).   On March 26, 2010, the 30th day after the court's order
> granting leave to amend, the trustee filed an amended complaint that failed to
> comply with the court's order.   The trustee also failed to file the exhibits to the
> first amended complaint until April 20, 2010.   The trustee has not given a
> satisfactory explanation why he could not have alleged the elements for an actual
> fraud claim in the first amended complaint after the deficiency was specifically
> brought to his attention by the court as well as by the defendant's November 20,
> 2009 motion to dismiss the original complaint.   *See Perkins v. Am. Elec. Power
> Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001) (court did not abuse its
> discretion in denying motion to amend after court previously gave plaintiff
> opportunity to cure deficiency and plaintiff declined to do so).   Therefore, the
> court did not abuse its discretion when it declined to give the trustee a third
> attempt to state a claim for actual fraud through further amendment.   Such a
> dismissal is properly on the merits.   *See* Fed. R. Bankr. P. 7041 (incorporating
> Fed. R. Civ. P. 41(b), which states "any dismissal not under this rule . . . operates
> as an adjudication on the merits").

*Id.* at *14-15.

In this matter, Trustee filed her initial complaint and received a motion to dismiss that set

forth virtually all of the same arguments raised in the Motion before the Court.   Rather than

respond to the initial motion to dismiss after obtaining an extension of time to do so, Trustee

instead filed the Amended Complaint.   That amended pleading failed to address most of the

deficiencies identified in the first motion to dismiss in connection with her initial pleading.   By

way of one example, both the Trustee's initial pleading and her Amended Complaint fail to

identify any transfers—from the Subsidiaries to U.S. Coal, and from U.S. Coal to PC—with any

degree of specificity.   Yet, as of August 16, 2016 (the date Trustee filed the Amended

Complaint), she had served as the chapter 7 trustee in the main bankruptcy case for over 15

months, more than enough time to have identified the records of U.S. Coal and the Subsidiaries

that would have permitted the transfers to have been plead with requisite specificity.

Trustee already amended once and chose not to correct the pleading deficiencies

addressed in PC's initial motion.   Trustee has not filed a motion for leave to further amend her

pleading.   Trustee's Response does not offer a basis as to why the deficiencies in her initial

pleading regarding specificity of transfers were not and could not have been addressed in the

Amended Complaint, or what she would propose to include in a further amended pleading.   The

Court concludes that Trustee's failure to address the original pleading's deficiencies, despite

ample time to do so, reflects either that Trustee did not take the steps necessary to proceed with

her fraudulent transfer claims with respect to the Cash Transfers in good faith, or that permitting

additional amendment would be futile.

## CONCLUSION

To summarize, Trustee's Claims against PC as a mediate or immediate transferee fail to

state a claim upon which relief can be granted because the Amended Complaint fails to state a

claim for avoidance of any transfers from the Subsidiaries to U.S. Coal.   The Amended

Complaint also fails to state viable claims against PC as an initial transferee or beneficiary

transferee of the Subsidiaries.   Further, Trustee has failed to state a claim in the Amended

Complaint for either actual or constructive fraud against PC as an initial transferee of U.S. Coal.

Finally, the Amended Complaint does state a claim against PC as an initial transferee of

preferential transfers under § 547.   For the foregoing reasons, the Motion is GRANTED in part and DENIED in part, and the Court ORDERS as follows:

1.      Counts I-VI and VIII are DISMISSED WITH PREJUDICE to the extent they seek avoidance and recovery of the Cash Transfers based on actual or constructive fraud.   The Amended Complaint fails to allege a sufficient basis to avoid and recover the Cash Transfers as actually fraudulent transfers under Counts I and III, or as constructively fraudulent transfers under Counts II, IV, V and VI.   As a result, Trustee may not recover the Cash Transfers under § 550 as pled in Count VIII.

2.      Counts VII and VIII are DISMISSED WITH PREJUDICE to the extent they seek avoidance and recovery of the Preference Payments based on PC as a mediate or immediate transferee, or as the initial transferee or beneficiary transferee, of the Subsidiaries.   The Amended Complaint fails to allege a sufficient basis to permit Trustee to pursue the Preference Payments made to PC under Count VII except to the extent the Amended Complaint asserts that PC is the initial transferee of the Preference Payments from U.S. Coal.   As a result, Trustee may not recover the Preference Payments under § 550 as plead in Count VIII except to the extent they are avoided from PC as the initial transferee from U.S. Coal.

33

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, March 24, 2017**
**(tnw)**